UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH A. M.<br><br>             Petitioner,<br><br>   v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br>Administration,<br><br>          Respondent. | Case No. 1:20-cv-00374-DCN-CWD<br><br>**REPORT AND<br>RECOMMENDATION** |

## INTRODUCTION

Petitioner brought this matter for judicial review of Respondent's denial of her application for supplemental security income. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will recommend that the decision of the Commissioner be remanded for further proceedings.

**BACKGROUND**

On March 16, 2017, Petitioner protectively filed an application for supplemental security income under Title XVI of the Social Security Act. She alleges a disability onset date of July 15, 2015, due to a right ankle fracture, status post fixation surgery, and post-traumatic stress disorder. (AR 18.)[1] Petitioner's application was denied upon initial review and on reconsideration. (AR 15.) A hearing was held before Administrative Law Judge (ALJ) Christopher Inama on October 25, 2018,[2] at which the ALJ heard testimony from Petitioner and a vocational expert. (AR 15, 51.) Thereafter, the ALJ requested review through interrogatories posed to an impartial medical expert, Colette Valette, Ph.D. (AR 15.) The ALJ conducted a supplemental hearing on January 24, 2019, at which Dr. Valette and a vocational expert testified. (AR 15.) Petitioner was represented during both administrative hearings by legal counsel, and had the opportunity to cross-examine Dr. Valette at the second hearing. *Id.*

On May 30, 2019, the ALJ issued a written decision finding Petitioner was not under a disability from March 16, 2017, through the date of the decision, and therefore found Petitioner is not disabled. (AR 27.) Petitioner timely requested review by the Appeals Council, which denied her request on June 19, 2020. (AR 1 – 6.)

Petitioner timely appealed this final decision to the Court on July 28, 2020. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

---

[1] The ALJ found these two impairments severe at step two. (AR 18.)

[2] The ALJ incorrectly refers to the hearing date as October 18, 2018. The hearing transcript indicates the hearing was held on October 25, 2018. (AR 51.)

405(g). At the time of her alleged disability onset date of July 15, 2015, Petitioner was

forty-seven years of age, and she attained fifty-one years of age by the time the ALJ

issued his written determination on May 30, 2019. (AR 27.) Petitioner obtained her GED,

and completed some college coursework. (AR 25, 60-61.) She has past work experience

as an inspector/hand packager, and as a certified nurse assistant (CNA). (AR 25, 60 – 61.)

At the October 2018 hearing, Petitioner testified she was working part time, four hours

each day, five days a week, as a dishwasher in an assisted living facility, earning $8.00 an

hour. (AR 62 – 63, 68.)

## ISSUES FOR REVIEW

1.    Whether the ALJ correctly determined that Petitioner's mental impairments did
      not meet or equal Listing 12.15 at step three?

2.    Whether the ALJ reasonably evaluated the medical opinion evidence?

3.    Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony
      concerning her physical and mental impairments?

4.    Whether the ALJ's Residual Functional Capacity determination is supported by
      substantial evidence?

      Issues two and four, as well as three and four, are closely related and will be

discussed together in Sections 2 and 3 below.

## STANDARD OF REVIEW

      The Court will uphold an ALJ's decision unless: (1) the decision is based on legal

error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874

F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*,

139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

## DISCUSSION

### 1.     The ALJ Did Not Err at Step Three

Petitioner argues there is not substantial evidence to support the ALJ's findings that the limitations stemming from her mental disorders did not meet the criteria under Paragraph B of Listing 12.15 for Truama- and Stressor-Related Disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.15. At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulation No. 4. The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. § 404.1525. If a claimant meets or equals a

listed impairment, he or she will be found disabled at step three of the sequential process without further inquiry. *See* 20 C.F.R. § 404.1520(d).

To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, to the characteristics of a listed impairment "most like" the claimant's impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if he adequately summarizes and evaluates the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512.

To satisfy the requirements of Listing 12.15, Petitioner must satisfy criteria in paragraph A of the Listing, which medically substantiates the presence of a mental disorder, and the criteria in either paragraph B or C, which describes the functional limitations associated with the disorder that are incompatible with the ability to work. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. The parties do not dispute that Petitioner's psychological symptoms satisfy the requirements of Paragraph A of Listing 12.15. At

issue is the ALJ's finding that Petitioner's impairments did not meet the criteria of Paragraph B.

To satisfy the paragraph B criteria, Petitioner's paragraph A impairments must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning listed in paragraph B. These four areas are:

1. Understand, remember, or apply information;

2. Interact with others;

3. Concentrate, persist or maintain pace; and

4. Adapt or manage oneself.

Listing 12.15B (citing 12.00E). A marked limitation means that a claimant's ability to function independently, appropriately, effectively, and on a sustained basis in a particular area, is seriously limited. 20 C.F.R. § pt. 404, subpt. P, app. 1, 12.00F.2. An extreme limitation means that a claimant is not able to function in a particular area independently, appropriately, effectively, and on a sustained basis. *Id*.

The ALJ found Petitioner's mental impairments did not meet the paragraph B criteria, because he concluded the evidence supported only moderate limitations[3] in all four listed areas of mental functioning. In doing so, the ALJ relied upon Dr. Valette's review of the record and her opinions that Petitioner had no marked impairments in the

---

[3] A moderate limitation is defined as follows: "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Listing 12.00F.

functional areas addressed in paragraph B of Listing 12.15. (AR 19.) The ALJ also explained how he arrived at his determination.

For instance, concerning Petitioner's ability to concentrate, persist or maintain pace, the ALJ explained that Petitioner had some success in 2016 and 2017 while working with vocational rehabilitation, and she received good feedback from part-time employers. (AR 19, citing Ex. 8F.) He noted that, although Petitioner "experienced decompensation in late 2018 due to a combination of mental health and medication issues…[m]ost mental status examination[s] do not document serious problems with attention or focus." (AR 19.) The ALJ did not cite to the record to support this statement, but he discussed and cited to other medical records later in his written determination referencing mental status examinations during the period of March 2016 – April 2017. (AR 23, citing Ex. 5F, 10F.) From this evidence, the ALJ concluded Petitioner has a moderate limitation with regard to her ability to concentrate, persist, or maintain pace, and that the mental status examinations "did not describe problems that would prevent Petitioner from doing work with simple instructions, limited interaction, and low stress productivity demands." (AR 19, 23.)

Regarding Petitioner's ability to adapt or manage herself, the ALJ explained that, despite the Petitioner's extended psychiatric hospitalization in 2018, Petitioner's mental status examinations during her hospital stay were mostly normal, and she was able to maintain treatment and have "some success with vocational rehabilitation services" after moving from Portland, Oregon to Boise, Idaho in 2017. (AR 19.) Later in the written determination, the ALJ again noted Petitioner received good feedback from vocational

rehabilitation services in 2017. (AR 23 – 24.) The ALJ concluded that this evidence supported a finding of less than marked impairments in self-management and adaptability. (AR 19.)

Petitioner objects to the ALJ's findings in the two functional areas discussed above.[4] She cites to other evidence in the record that she contends support a finding that Petitioner suffered marked limitations in these two functional areas, such as Petitioner's extended psychiatric hospitalizations occurring in October of 2015, May – June of 2018, and December 2018 – January 2019. Petitioner contends occurrences of inpatient psychiatric treatment, as well as frequent counseling sessions, are inconsistent with a finding that Petitioner retains the ability to adapt or manage herself. She also faults the ALJ's failure to cite to the record and to explain how he arrived at his conclusion that Petitioner suffered only moderate limitations in these two functional areas.

She argues also that the ALJ's conclusion that Petitioner's move from Portland to Boise supports a finding of only moderate limitation in adapting or managing herself is not supported because her move required the assistance of her family to extricate her from a violent domestic partner. She contends the ALJ failed to explain what "some success while working with vocational rehabilitation" meant, because Petitioner completed a limited work trial consisting of a job trial for four hours each day for a total of four days, which did not develop into full-time gainful employment. And finally, she

---

[4] Petitioner does not challenge the ALJ's findings in the other two functional areas listed in Paragraph B, so the Court will not discuss them further.

**REPORT AND RECOMMENDATION - 8**

noted that treatment providers frequently documented Petitioner's poor concentration, distractibility, impaired memory, and disorganized thought processes, during medication management visits. She contends this evidence supports a finding of marked limitation in the functional areas involving concentration, persistence and pace, and the ability to adapt or manage oneself.

While Petitioner raises evidence that would support a contrary finding, she cannot achieve a remand when substantial evidence exists to support the ALJ's evaluation of the Paragraph B criteria. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Sharp v. Astrue*, 2009 WL 3199592, *2 (D. Idaho 2009) ("It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision."). This is particularly true where Petitioner bears the burden of proving that she satisfies the Paragraph B criteria and, thus, meets a Listing. *See White v. Astrue*, 2010 WL 3893951, *5 (D. Idaho 2010) (Petitioner bears the burden of proof to establish all criteria for an impairment determination, which criteria are "demanding and stringent.").

The ALJ discussed in more detail the evidence that supported his findings at step three elsewhere in his written determination. *See Bouchard v. Astrue*, No. EDCV 08-1891, 2010 WL 358538, at *4 (C.D. Cal. Jan. 25, 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) ("*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her [step three] conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'"). For instance, with respect to Petitioner's

evaluation by vocational rehabilitation, he noted that Petitioner made a good impression on managers at the nursery/garden center where she worked temporarily, she received positive feedback, and she was encouraged to apply for a job at the garden center in the future. (AR 23.) The ALJ discussed also that counseling notes throughout 2015 – 2018 document intact thought, speech, judgment, and insight, that her PTSD symptoms were well controlled with medication, and that providers noted progressive improvement in her moods and anxiety symptoms when she worked with her mental health providers. (AR 23.) The ALJ relied upon the opinions of Dr. Valette, who was of the opinion that Petitioner suffered only moderate limitations in the two functional areas Petitioner now challenges. (AR 19.)

While certainly not downplaying the severity of Petitioner's mental health symptoms, the Court finds the ALJ's determination at step three meets the substantial evidence standard, which requires only "more than a mere scintilla" of evidence. An ALJ's decision cannot be reversed because there exists some other evidence in the record that might support a different conclusion. *See Sharp*, 2009 WL 3199592 at *2. The Court finds the ALJ offered sufficient reasons supported by substantial evidence for finding that Petitioner's mental health impairments do not meet or equal a listed impairment. Accordingly, the Court recommends affirming the ALJ's adverse step three finding.

## 2. Medical Opinion Evidence and Resulting Physical RFC Determination

Petitioner argues the ALJ improperly weighed the medical opinion evidence, contending that the ALJ committed reversible error because he failed to discuss the opinion of Dr. Ralph Sutherlin; did not reconcile Dr. Sutherlin's opinions with those of

Drs. Coolidge and Vestal; and provided reasons that were not supported by substantial evidence in the record for giving the opinions of Drs. Coolidge and Vestal reduced weight. Consequently, Petitioner argues the ALJ's physical RFC determination with respect to Petitioner's ability to tolerate the standing and walking requirements of light work is not supported by substantial evidence. Had Petitioner been limited to sedentary work, Petitioner asserts her lack of transferrable skills and resulting limitation to unskilled work would have met the requirements of Medical Vocational Rule 201.14,[5] such that she would be deemed disabled as of her fiftieth birthday. 20 C.F.R. § 404.1563.

Respondent contends the ALJ provided sufficient reasons for giving the opinions of Drs. Coolidge and Vestal reduced weight. Further, Respondent contends that any error in failing to discuss Dr. Sutherlin's opinion was harmless, because the reasons the ALJ gave for rejecting the opinions of Drs. Coolidge and Vestal apply equally well to support discounting Dr. Sutherlin's opinion.

A. **_Physician Opinions_**

Dr. Ralph Sutherlin, D.O., MPH, rendered a written opinion on August 17, 2017, after Petitioner completed a vocational assessment and a 16-hour community based work evaluation in association with receiving job training assistance from Idaho Vocational Rehabilitation Services. (AR 750.) There is no evidence in the record indicating Dr. Sutherlin physically examined Petitioner. He noted that Petitioner experienced functional

---

[5] Medical Vocational Rule 201.14 states that if a claimant is between the ages of 50 and 54, has a high school education, cannot perform skilled work, and has no transferable skills based on their past work, the claimant must be found disabled.

limitations resulting from psychological and mental health conditions, as well as physical limitations which, in his opinion, prevented Petitioner from performing high impact or strenuous activities, or repetitive bending, lifting, or twisting; and that she should be permitted to change position as needed. (AR 750.) He opined that Petitioner could perform "light-medium" duties, with a 35 pound maximum lifting limitation, and that she could lift 25 pounds occasionally and 15 pounds frequently. (AR 750.) Finally, he stated that Petitioner's mental and physical limitations "may be too severe for full-time, gainful employment." (AR 750.)

Drs. Coolidge and Vestal are both Division of Disability Services (DDS) physicians. Dr. Coolidge reviewed the record on May 23, 2017, at the initial review stage, and Dr. Vestal reviewed the record on August 31, 2017, upon reconsideration. (AR 89-91; 108-109.) Drs. Coolidge and Vestal concluded Petitioner was limited to sedentary work due to Petitioner's complaints of ankle and back pain. At the time Dr. Coolidge reviewed the record in May of 2017, he noted that medical records indicated Petitioner walked with an unsteady gait and that her ankle and back conditions still caused pain. (AR 90-92.) Dr. Vestal reviewed and relied upon the same medical records as did Dr. Coolidge, and he arrived at the same conclusion as Dr. Coolidge.

**B.    *ALJ's Determination***

The ALJ did not mention Dr. Sutherlin's opinion in his decision at all, and he gave the opinions of Drs. Coolidge and Vestal "reduced weight." He explained that Drs. Coolidge and Vestal did not adequately account for Petitioner's "good recovery" from her ankle injury or her ability to perform "light-duty" work at a plant nursery in 2016 and

2017. (AR 25.) Having discounted the opinions of Drs. Coolidge and Vestal, the ALJ concluded that Petitioner's "mild problems" would support a finding that she retained the physical capacity to perform light work. (AR 25.) The resulting RFC determination by the ALJ contained no restrictions on Petitioner's ability to stand or walk during an 8-hour workday, and instead contained postural limitations such as limitations on climbing, balancing, stooping, exposure to vibrations, and exposure to unprotected heights. (AR 20). The ALJ next determined Petitioner retained the capacity to perform her past work as a hand-packager, which she performed at the light level, and that, even if the occupational base of light work was further eroded due to postural and other non-physical limitations, she could still perform the requirements of other representative occupations at the light-work exertional level. (AR 25 – 26.)

C. *Analysis*

The Court finds the failure of the ALJ to discuss Dr. Sutherlin's opinion, which was not inconsistent with the opinions of Drs. Coolidge and Vestal, constitutes error. The medical opinions are, as Petitioner asserted, congruous in the sense that all three doctors were ostensibly of the opinion Petitioner did not retain the ability to fulfill the standing and walking requirements of light work on a full-time basis. Light work requires the ability to be on one's feet up to two-thirds of a workday, and the ability to stand or walk, off and on, for a total of approximately 6 hours of an 8-hour workday. SSR 83-10. In contrast, sedentary work requires the ability to sit approximately 6 hours of an 8-hour workday, with periods of standing or walking of no more than 2 hours of an 8-hour workday. *Id.*

REPORT AND RECOMMENDATION - 13

Despite Dr. Sutherlin's opinion that Petitioner could not tolerate the demands of light work on a sustained basis to meet the demands of full time work, the ALJ completely ignored the opinion. By doing so, the ALJ failed to reconcile Dr. Sutherlin's opinion with the opinions of Drs. Coolidge and Vestal that Petitioner was limited to sedentary work, and with the ALJ's own determination that Petitioner was capable of sustaining full-time employment at the light exertional level. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 (9th Cir. 2007) (finding error when the ALJ did not discuss the opinions of the claimant's treating physicians, which contradicted the opinions of the non-examining physicians).

Next, the Court does not find the error harmless, because the two reasons the ALJ gave for rejecting the opinions of Drs. Coolidge and Vestal are not supported by substantial evidence in the record.[6] The ALJ's first reason for rejecting their opinions was that they did not adequately account for Petitioner's "good recover[y] from her ankle injury." (AR 25.) Petitioner contends that the medical evidence of record, when read in context, does not support a finding that Petitioner's ankle injury had healed sufficiently

---

[6] Petitioner asserts that the ALJ must give clear and convincing reasons supported by substantial evidence in the record to reject the uncontroverted opinions of the three non-examining physicians. However, that rule appears limited to situations where the ALJ rejects a treating physician's medical opinion that is not contradicted by the opinion of another physician. *See, e.g., Bray v. Comm'r of SSA*, 554 F.3d 1219 (9th Cir. 2009) (setting forth the "treating physician" rule). Petitioner has not cited any authority to support her assertion that the Court must apply the "clear and convincing" standard where, as here, the ALJ was confronted with the consistent opinions of three non-examining physicians.

**REPORT AND RECOMMENDATION - 14**

for her to sustain light work in full-time, competitive employment. She cites to evidence in the record that, in 2017 and 2018, medical providers noted Petitioner continued to walk with an abnormal gait; she had abnormal findings upon examination with respect to her right ankle mobility; and she suffered from peripheral neuropathy, chronic low back pain, and right ankle pain. Other than citing one instance in the record where a treatment provider noted improvement in Petitioner's range of motion and pain, Respondent did not address whether this reason was sufficient for discounting Dr. Coolidge's and Dr. Vestal's opinions. Resp. Brief at 5, 6 – 8. (Dkt. 22.)

The ALJ discussed the course of Petitioner's ankle injury, noting that she injured her right ankle in January of 2016, and later underwent an open reduction internal fixation surgery. (AR 22.) Petitioner reportedly was managing her pain by February of 2016, and sleeping well, although she reported difficulty bearing weight on her right leg. (AR 22.) The ALJ noted that, by mid-2016, Petitioner's ankle had improved, in that she was ambulating independently, although Petitioner reported to her treatment providers that it throbbed by the end of the day and she had difficulty standing for long periods of time. (AR 22.) The ALJ explained that, "subsequent treatment records do not document ambulation problems, and physical examinations show normal lower extremities," citing as an example Exhibit 16F/28. (AR 22, 1199.) The ALJ concluded that the physical RFC "accounts for the claimant's lingering ankle pain." (AR 22.)

The Court agrees with Petitioner that the ALJ's conclusion is belied by the record. The ALJ (and Respondent) cited one treatment note to support the inference that Petitioner's ankle showed "improvement" such that she could fulfill the walking and

standing requirements of light work on a full-time, competitive basis without limitations. (AR 22, citing Ex. 16F/28). However, Exhibit 16F consists of emergency department treatment notes dated November 28, 2018, which document only that a physical examination did not reveal edema in Petitioner's bilateral lower extremities, and her gait was not tested. (AR 22, 1199.) In contrast, treatment records from 2017 and 2018, which the ALJ did not discuss, note gait disturbance, complaints of pain in the right ankle, and objective medical evidence consistent with Petitioner's complaints of pain.

For example, on February 27, 2017, Nurse Practitioner Cassi Shelly noted decreased range of motion in Petitioner's right ankle, documenting "right ankle and lower leg with swelling noted, non erythematous, decreased ROM with flexion and extension, more swelling around ankle joint but notable below knee 1+ as well." (AR 499 – 500, 502.) At a follow up visit with NP Shelly on April 12, 2017, Shelly notes Petitioner's right ankle appeared improved from the prior visit, due to less swelling and less pain, but that Petitioner reported pain worsened the more she spent time on her feet. (AR 495.) Shelly recommended Petitioner keep her leg elevated to help with swelling. (AR 503.) On May 1, 2018, Petitioner's treating physician, Dr. Magni Hamso, documented Petitioner complained of pain at the end of each day in her right ankle and low back. (AR 1123.) Dr. Hamso observed that Petitioner exhibited an unsteady gait, and she documented complaints of persistent ankle pain. (AR 1123.) Dr. Roberto Negron's treatment record dated December 3, 2018, revealed that Petitioner exhibited pain in her right ankle and he noted a gait disturbance, such that she could perform only 1 - 2 tandem steps. (AR 1256 – 57.) Upon admission to Intermountain Hospital on December 3, 2018,

Dr. Negron ordered fall precautions and a consultation regarding Petitioner's gait disturbance. (AR 1257.)

The ALJ's second reason for discounting the opinions of Drs. Coolidge and Vestal is that the opinions did not adequately account for Petitioner's ability to do some light-duty work at a plant nursery. (AR 25.) Petitioner argues that her work attempt in connection with receiving vocational rehabilitation services in 2017 was limited to four shifts of four hours duration each, over the course of one week during August of 2017, and thus cannot support a conclusion that Petitioner could sustain light work on a full-time basis.

The Court agrees the ALJ's second reason for discounting the physicians' opinions is not supported by substantial evidence. First, the ALJ failed to discuss the contradictory evidence in the record concerning Petitioner's work attempt and her physical limitations. The employment specialist who evaluated Petitioner for vocational rehabilitation services in October of 2017 at the conclusion of her work attempt indicated Petitioner would need support "to ensure her employer understands her physical limitations, [and] stay at a part time schedule…." (AR 749.) Also, the employment specialist identified one of Petitioner's barriers to employment included "limited standing." (AR 23, 748.) Last, Dr. Sutherlin was of the opinion that Petitioner could not maintain a full-time schedule at the light exertional level with her physical limitations. (AR 750.)

And second, the ALJ failed to discuss the inconsistency between his own determination that Petitioner could tolerate the walking and standing demands of full-

time, light work and the evidence in the record contradicting his determination. In context, the Court finds Petitioner's short period of part-time work in conjunction with a vocational rehabilitation assessment in October of 2017 is not substantial evidence of Petitioner's ability to sustain the walking and standing requirements of light work on a full-time, competitive basis..

Respondent argues in support of the ALJ's conclusion, contending that the full context of Petitioner's vocational rehabilitation evaluation in 2017 supports the ALJ's finding. Resp. Brief at 7. (Dkt. 22.) Respondent cites the positive feedback received from the supervisor at the plant nursery, which the vocational rehabilitation evaluator documented, and Petitioner's expressed willingness to work full time. (AR 748-49.) However, the evaluator's assessment in this regard focused on Petitioner's demeanor and her reported ability to interact with customers, not on Petitioner's physical limitations. (AR 748-49.) And, although Petitioner may have expressed a willingness to work full time, her desire to do so does not overcome the objective observation of either the vocational rehabilitation specialist or Dr. Sutherlin in the context of assessing Petitioner's ability to return to gainful, full-time employment at the light exertional level without any restrictions on the ability to walk or stand throughout the day.

The Court therefore finds the ALJ erred by not discussing Dr. Sutherlin's opinion, and that his stated reasons for discounting the non-examining physicians' opinions rests on inferences that cannot be reasonably drawn from the record. Consequently, the Court finds the ALJ's determination that Petitioner could sustain the standing and walking requirements of light work is not supported by substantial evidence in the record as a

whole. Thus, the resulting physical RFC assessment is not supported by substantial evidence in the record, and the Court recommends remand on issues two and four.[7]

### 3.    Subjective Symptom Testimony

The ALJ considered Petitioner's subjective symptom testimony concerning her physical and mental impairments, finding her testimony did not substantiate her subjective allegations of disabling limitations. The ALJ concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record. (AR 22.) Petitioner argues the ALJ's conclusion is not supported by substantial evidence in the record, and is therefore erroneous.

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the

---

[7] Issue two concerns the ALJ's evaluation of the medical opinion evidence, while issue four concerns the ALJ's residual functional capacity determination, which relied upon his assessment of the medical opinion evidence.

severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons[8] for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

---

[8] Respondent contends the clear and convincing standard is inconsistent with the substantial evidence standard of review prescribed by Congress. Resp. Brief at 4. (Dkt. 22.) This argument has been repeatedly raised before the Court. Recently, the United States Court of Appeals for the Ninth Circuit explained in *Lambert v. Saul*, 980 F.3d 1266 (9th Cir. 2020), that an ALJ must offer clear and convincing reasons, not mere "non-specific conclusions," and identify "which testimony [the ALJ] found not credible, and [explain] which evidence contradicted that testimony." *Id.* at 1277 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). This is so that the Court can meaningfully review the ALJ's decision. *Id.* In turn, the reasons for rejecting a claimant's testimony about her symptoms must be supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g). In other words, the Court should be able to review the portions of the record cited in support of the ALJ's reasons, and determine whether the evidence is sufficient to support them. Accordingly, the Court finds no inconsistency.

**REPORT AND RECOMMENDATION - 20**

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029 at *1-2.[9] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

Petitioner alleges an inability to work owing to both her mental and her physical impairments. She contends the ALJ's summary of her testimony, and his resulting

---

[9] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

**REPORT AND RECOMMENDATION - 21**

conclusions that she retained the physical RFC to perform light work and the mental RFC to carry out simple, routine instructions, lacks specificity. Further, she alleges that the ALJ insufficiently explained how he reached his conclusion that the RFC adequately accounts for all of her physical and mental limitations. She argues the ALJ provided a boilerplate statement and did not identify inconsistencies between Petitioner's testimony and the medical record. She contends a more thorough review of the record as whole supports an alternate conclusion that she could not handle the physical and mental demands of full-time work, citing instances where mental health practitioners noted distractibility and poor concentration, and other records where providers documented Petitioner's pain upon ambulation due to ankle and low back pain. Pet. Brief at 16 - 17. (Dkt. 21.)  Last, Petitioner contends the ALJ failed to discuss the evidence in the record that Petitioner would be absent from work more than two days each month on a regular basis, citing Petitioner's weekly counseling appointments, monthly medication management appoints, and extended inpatient psychiatric hospitalizations, which absences the vocational expert testified would be work-preclusive. (AR 79.)

Turning first to Petitioner's contention that her ankle condition prevented her from sustaining full time work due to pain with prolonged standing and walking, the ALJ discussed the medical evidence of record, noting "improvement." (AR 22.) The ALJ therefore concluded that the RFC determination, which limited Petitioner to light work with postural limitations such as avoiding exposure to vibrations, unprotected heights, and dangerous machinery, adequately accounted for Petitioner's physical limitations related to her ankle injury. (AR 20, 22.) The Court discussed this conclusion in the

context of the ALJ's evaluation of the physician opinions in section 2 above, and found it is not supported by substantial evidence in the record.

With respect to the ALJ's assessment of Petitioner's mental health symptoms and the degree of their interference with work-related tasks, the parties expended a great deal of ink discussing the ALJ's assessment of Petitioner's psychiatric treatment history and the impact of her mental health symptoms on her ability to sustain full-time, competitive employment. However, the Court finds Petitioner's argument concerning her absences, and their work-preclusive effect, to be of greater significance here. Notably, the ALJ engaged in a lengthy discussion of Petitioner's mental health treatment history, which in turn reflected the frequency of Petitioner's mental health counseling sessions and medication management appointments, as well as three extended inpatient hospitalizations that occurred in October of 2015, June of 2018, and December 2018 - January 2019. Yet, the ALJ failed to comment on the impact these regular appointments and extended hospitalizations might have upon Petitioner's ability to maintain regular work attendance. (AR 23 – 24.) The vocational expert testified at the hearing that regular absences in excess of two days each month would preclude employment. (AR 79.) Respondent failed to address Petitioner's argument concerning her work attendance.

The fact that Petitioner's symptoms improved when she followed treatment recommendations and took medications as directed does not account for the fact that, to achieve compliance, Petitioner must actually attend weekly counseling sessions and monthly medication management appointments. (*See, e.g.*, AR 23, where the ALJ notes that "close care with her prescribing nurse practitioner and mental health counselor…was

helpful."). And, although Petitioner's counselor on September 4, 2018, expressed that "it may be time to discuss with client reducing therapeutic sessions due to consistent progress," the record reflects such a reduction never occurred and there was no further mention of reducing counseling sessions. (AR 799.)

Later, on November 28, 2018, Petitioner was admitted to St. Luke's Hospital with hypotension and acute renal failure believed to be secondary to the adverse effect of psychiatric medications. (AR 1195.) The emergency room physician notes indicate that it was "unclear if patient truly taking them properly or not." (AR 1195.) Thereafter, Petitioner was admitted to Intermountain Hospital after expressing suicidal ideation, where she was treated for the same, as well as depression and anxiety, from December 2 – 18, 2018. (AR 1252.) She next was admitted to State Hospital South on December 18, 2018, and committed under Idaho Code § 66-329, until her discharge on January 22, 2019. (AR 1260 - 1309.) Upon discharge, the attending physician noted that, "should she not be able to comply with follow-up visits; or should she not be able to sleep adequately for whatever reasons," Petitioner's prognosis would worsen. (AR 1307.)

Accordingly, the ALJ's rationale for rejecting Petitioner's statements about the intensity, persistence and limiting effects of her psychological symptoms is not supported by substantial evidence in the record when absences due to weekly counseling and monthly medication management appointments, as well as extended hospital stays due to psychiatric symptoms, are considered. The Court therefore finds the ALJ's stated reasons for discrediting Petitioner's testimony are not supported by substantial evidence in the record, and the resulting RFC determination is the product of legal error.

4.     **Remand**

Petitioner asserts that this matter should be reversed and remanded for an award of benefits. When an "ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony," the Court may remand for a calculation of benefits. *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007). Such circumstances are rare, and it must be clear from the record that the Petitioner is unable to perform gainful employment in the national economy. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). If not, the proper course is to remand to the agency for additional investigation or explanation. *Id.*

Here, it is not entirely clear from the record that, had the ALJ properly evaluated the non-examining physicians' opinions and credited Petitioner's testimony, Petitioner would be entitled to benefits. Although Petitioner contends she meets Medical Vocational Rule 201.14 as of her fiftieth birthday and would be deemed disabled if limited to sedentary work, Petitioner offers no analysis. Pet. Brief at 20. (Dkt. 21.) The ALJ did not discuss whether Petitioner would be found disabled if limited to sedentary work, and there was no corresponding hypothetical posed to the vocational expert regarding the same. Finally, although the vocational expert offered an opinion regarding the impact of absences on regular attendance, the ALJ did not acknowledge Petitioner's potential work absences due to medical management of Petitioner's psychiatric symptoms via regular counseling sessions and pharmacotherapy appointments.

Accordingly, the proper course is to remand for further proceedings. *See Harmen v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("[W]here the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits.").

## CONCLUSION

Based on the above, the Court finds the Commissioner's decision is not supported by substantial evidence and does not reflect application of the correct legal standards. Petitioner has met her burden of establishing harmful error with respect to the ALJ's evaluation of the medical opinion evidence and Petitioner's symptom testimony in support of her request for remand. Consequently, the ALJ's RFC determination is not supported by substantial evidence. Therefore, the Court recommends that the Petition for Review be granted and that this matter be remanded for further proceedings.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)       The Petition for Review (Dkt. 1) be **GRANTED**;

2)       This action be **REMANDED** to the Commissioner for further proceedings consistent with this opinion;

3)       The Remand be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002); and

4)       Judgment be entered consistent with the above in favor of Petitioner.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

DATED: July 2, 2021

Honorable Candy W. Dale
Chief United States Magistrate Judge